IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| INTERNATIONAL LONGSHOREMEN'S ASSOCIATION-AFL-CIO, LOCAL 1575, et al,<br><br>    Plaintiffs,<br><br>    v.<br><br>HORIZON LINES OF PUERTO RICO, INC., et al,<br>    Defendants. | CIVIL NO. 06-2034 (FAB/CVR) |

**REPORT AND RECOMMENDATION**

**INTRODUCTION**

On October 11, 2007, the Court entered judgment for defendants on the complaint and ordered plaintiff Longshoremen's Association AFL-CIO, Local 1575 (hereafter "Longshoremen's Association") to restore to the Royalty Fund all assets previously held, including monies and properties, as well as rents, due and which were diverted to the Guillermo Ortiz González Building Administration Fund. Plaintiffs were also ordered to inform the tenants of the Longshoremen's Association Building they were to make their rent payments to the Royalty Fund until its property terminated. If no agreement was reached as to disposition of the Royalty Fund's assets, the dispute was to be submitted to arbitration. The Court also entered judgment for defendant Royalty Fund on the counterclaim and held plaintiff Longshoremen's Association was to pay the employer

International Longshoremen's Assoc., Local 1575, et al
v. Horizon Lines of Puerto Rico, et al.,
Civil No. 06-2034 (FAB-CVR)
Report and Recommendation
Page No. 2

---

trustee up to the month of October of 2007, the amount of $16,800.00 for its services and to continue paying same at the rate of $400.00 per month for services until such time the Royalty Fund was terminated or the trustee was replaced.[1] (Docket No. 145).

On June 6, 2011, the Employer's Trustee to the Royalty Fund, Mr. Rafael Cuevas Kuinlam, (hereafter "Royalty Fund") filed a Verified Motion for Contempt and Writ of Execution. (Docket No. 226). On July 5, 2011, plaintiff Longshoremen's Association filed a response in opposition. (Docket No. 231). Upon the retirement of the assigned Magistrate Judge, the pending motions were referred to this Magistrate Judge on March 15, 2012 for report and recommendation. (Docket Nos. 237 and 238).

The motion for contempt above mentioned is but the final chapter in the saga of several attempts between the parties to resolve their differences and controversies, their attempts to resort to arbitration resulting from the Court's Opinion and Order of October 11, 2007, insofar of disposition of the Royalty Fund's assets, mostly as to the sale of the real estate property, which dispute was to be submitted to arbitration, as well as former renewals for contempt filed by Royal Fund emanating from their contractual relation.

## LEGAL DISCUSSION

Royalty Fund has requested that Longshoremen's Association be found in contempt and a writ of attachment be issued for the rent monies it has not restored as required by the judgment issued by the Court.

---

[1] The new trustee of the Royalty Fund, Mr. Rafael Cuevas Kuinlam, substituted former trustee Robert Ramírez on August of 2010.

International Longshoremen's Assoc., Local 1575, et al
v. Horizon Lines of Puerto Rico, et al.,
Civil No. 06-2034 (FAB-CVR)
Report and Recommendation
Page No. 3

---

Civil contempt may be imposed to compel compliance with a court order or to compensate a party harmed by non-compliance. *See* United States v. Saccoccia, 433 F.3d 19, 27-28 (1st Cir. 2005) (citing to McComb v. Jacksonville Paper Co., 336 U.S. 187, 191, 69 S.Ct. 497 (1949)).

To be found in contempt proof must establish (1) that the alleged contemnor had notice that he was "within the order's ambit,"; (2) that the order was "clear and unambiguous," *e.g.,* AccuSoft Corp. v. Palo, 237 F.3d 31, 47 (1st Cir. 2001) (quoting Project B.A.S.I.C., 947 F.2d 11, 16 (1st Cir. 1991); (3) that the alleged contemnor had the ability to comply, *see* United States v. Rylander, 460 U.S. 752, 757, 103 S.Ct. 1548 (1983) (stating that "where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action"); and (4) that the order was indeed violated, Project B.A.S.I.C., 947 F.2d at 16.  United States v. Saccoccia, 433 F.3d 19 (1st Cir. 2005).

Royalty Fund has submitted in its verified motion and request for writ of execution that Longshoremen's Association has failed to restore to the Royalty Fund all assets previously held, in particular it claims all rents that were due and were required to be restored under the Opinion and Order and the judgment entered by this Court, which was final and unappealable.  Succinctly, Royalty Fund avers the firm renting the facades of the Royalty Fund building, Tactical Mesh, Inc. (hereafter "Tactical"), was informed by thereafter illegally found Guillermo Ortiz Building Fund, the Executive Director of Longshoremen's Association,  the contract held by Royalty Fund had been assigned to the

International Longshoremen's Assoc., Local 1575, et al
v. Horizon Lines of Puerto Rico, et al.,
Civil No. 06-2034 (FAB-CVR)
Report and Recommendation
Page No. 4

Longshoremen's Association Local 1575 for which Tactical was to pay directly to Local 1575, which the latter eventually received, accepted and cashed. (Letter, Exhibit 1). Royalty Fund further submits the exhibits corresponding to the amounts paid, the checks issued, stamped and deposited in Longshoremen's Association bank accounts, for a total of Sixty Nine Thousand Four Hundred and Eighty Three Dollars and Twenty Nine Cents ($69,483.29). (Checks, Exhibit 2). Royalty Fund claims that at least two of the Longshoremen's Association elected presidents thereafter attempted to recoup these monies improperly collected, but nothing was achieved. After new trustees were appointed to the Royalty Fund, there was also an agreement to request the collection of these rent payments directly to the Longshoremen's Association's president. Still, almost four years after having been ordered by the Court and notwithstanding specific requests to the Longshoremen's Association to restore the assets to Royalty Fund it previously held, in particular all rents collected from Tactical, and the need of Royalty Fund for the funds to continue with its operating expenses, the Court is once more faced with an urgent request for the rents to be restored in compliance with the judgment of the Court.

Longshoremen's Association submitted an opposition to the request for contempt and writ of execution agreeing that checks were received from Tactical for lease space in the Royalty Fund building for advertising in the total amount stated of $69,483.29. Longshoremen's Association does not dispute the final and unappealable order of the Court regarding the need to restore to Royalty Fund all assets previously held, including all rents and which were diverted. (Docket No. 231, p. 2). However, Longshoremen's Association

International Longshoremen's Assoc., Local 1575, et al
v. Horizon Lines of Puerto Rico, et al.,
Civil No. 06-2034 (FAB-CVR)
Report and Recommendation
Page No. 5

states the trustees agreed thereafter that several lease payments made by Tactical were to be reimbursed to Royalty Fund, stating it had thus paid for waste disposal, spare parts, materials and test related to the repair of the building electrical parts, and for the trustee's liability insurance policy in lieu of restoring the monies. Thus, Longshoremen's Association submits evidence of checks which were issued to cover these other expenses, that is, checks for $5,683.76 of February 1, 2008; $630.00 of February 1, 2008; $15,000.00 of August 22, 2008; and $7,794.00 of November 30, 2007. In addition, two other checks that were issued indicate they were to reimburse Royalty Fund for the payments received from Tactical, to wit: $20,000.00 of September 30, 2009 and $15,000.00 of November 1, 2009.

Longshoremen's Association attempts to include therein reimbursements made to the G.O.G. Building Administration Fund of payments received from Tactical, which are evidently not identified as received by Royalty Fund, to wit; $500.00 of September 13, 2007; $500.00 of May 17, 2007; $1,000.00 of August 16, 2007 and $500.00 of May 10, 2007. It also paid $7,885.90 on November 30, 2006, for professional services related to the litigation of the case, failing to state if the monies were paid for its own expenses in litigating against Royalty Fund or to reimburse Royalty Fund for the legal expenses to secure judgment in favor precisely against Longshoremen's Association. Longshoremen's Association concludes it has paid Seventy Four Thousand Four Hundred Ninety Three Dollars and Sixty Cents ($74,493.66), being in excess of the amount due to Royalty Fund by $5,010.37. Furthermore, it avers, if any impasse as to these payments is present, under the trust agreement the matter should be submitted to arbitration before an impartial

International Longshoremen's Assoc., Local 1575, et al
v. Horizon Lines of Puerto Rico, et al.,
Civil No. 06-2034 (FAB-CVR)
Report and Recommendation
Page No. 6

person selected by the majority of the trustees, and if no agreement of said trustee is achieved, the Court should be requested to appoint one.[2]

Upon the long time span and standing dispute presented by the parties which shows their inability to comply with a final and unappealable judgment, and since the Court has full jurisdiction to ascertain compliance with its judgments and rulings, at this stage of proceedings it is impractical to impose upon the parties once more a requirement to arbitrate.[3] More so, the Court has referred this issue to a Magistrate Judge, which results in a report and recommendation on the basis of the findings on the record, without need for further examination.

It is thus uncontested the total amount of $35,000.00, received from Tactical was reimbursed to Royalty Fund by Longshoremen's Association, to wit; $20,000.00 of September 30, 2009 and $15,000.00 of November 1, 2009, of checks #2022 and #2057, respectively, and are in compliance with the judgment issued by the Court. Hence, Longshoremen's Association has already partially reimbursed Royalty Fund the rents claimed in the motion for contempt paid by Tactical in the amount of $35,000.00.

---

[2] Longshormen's Association argues this dispute, as to compliance with the judgment and the request contempt, should be object of arbitration as per the trust agreement. There is no documentation on the record as to such trust agreement which is not part of the motion for summary judgment nor of its opposition. Furthermore, compliance with a clear and unambiguous order and/or judgment of the court is not one to be subject of discussion and/or enforcement through arbitration. Any reference in the judgment as to arbitration relates solely to the disposition of assets if the parties could not agreed upon, such as the sale of the ILA building, and is not considered related to the judgment ordering Longshoremen's Association to restore assets or rent.

[3] The parties participated in arbitration as to a dispute related to the sale of the building located at 1055 J.F. Kennedy Ave. in San Juan, Puerto Rico which the judgment has referred to as upon lack of agreement regarding the disposition of assets.

International Longshoremen's Assoc., Local 1575, et al
v. Horizon Lines of Puerto Rico, et al.,
Civil No. 06-2034 (FAB-CVR)
Report and Recommendation
Page No. 7
---

Insofar as the remaining checks produced by Longshoremen's Association as being agreed upon between the parties to be attributed to rent reimbursement, we note that there is no document to substantiate the trustees indeed agreed that Royalty Fund would not be reimbursed of said lease payments made by Tactical but the monies were to be used to cover other expenses. Moreover, it was not been established that payments from the rents received from Tactical which Longshoremen's Association diverted for payment of legal representation, reimbursement to G.O.G. Building Administration Fund and for spare parts and maintenance, were agreed upon nor were indeed for the benefit of Royalty Fund for which these amounts should not be considered in compliance with the judgment of this Court. Neither is the amount claimed by Longshoremen's Association as excess disbursement of $5,010.37.00, established to be in some sort of compliance with the judgment requiring same to "restore to Royalty Fund all assets previously held, including monies and properties, as well as rents, due and which were diverted to the Guillermo Ortiz Gonzalez Building Administration Fund."

Thus, these checks and/or payments in the remaining due amount of $34,483.29, nor the $5,010.37.00 claimed as excess payment submitted by Longshoremen's Association with its opposition should not be considered in compliance with the judgment of this Court for purposes of the motion for contempt filed by Royalty Fund. Thus, Royalty Fund should be entitled to a writ of attachment in the due amount of $34,483.29 as to the rent payments received by Longshoremen's Association which were to be restored to Royalty Fund but were not restored.

International Longshoremen's Assoc., Local 1575, et al
v. Horizon Lines of Puerto Rico, et al.,
Civil No. 06-2034 (FAB-CVR)
Report and Recommendation
Page No. 8

---

We thus find that Royalty Fund has produced clear and convincing evidence, which Longshoremen's Association has not rebutted but rather attempted to justify, that there was a failure to comply with a clear and unambiguous order of the Court as contained in the judgment. In fact, Longshoremen's Association would have been expected as of date of judgment to inform the tenants of the Longshoremen's Association Building they were to make their rent payments to the Royalty Fund until it is property terminated or proceed to reimburse these monies as received. To the contrary, Longshoremen's Association informed Tactical by May 3, 2007, it was to continue paying its rent for lease of advertisement directly to Longshoremen's Association and still by October 11, 2007 (date of the judgment) it continued to receive, deposit and cash and not reimburse the rents to Royalty Fund as it had been ordered by the Court.

Additionally, the judgment also ordered Longshoremen's Association to restore to Royalty Fund all assets previously held, including monies and properties, as well as rents, due and which were diverted to the Guillermo Ortiz Gonzalez Building Administration Fund. Only the two checks for $20,000.00 and $15,000.00, presented as reimbursement of the rents that had been received could be considered in compliance with the order to restore assets to Royalty Fund. The remaining checks claimed by Longshoremen's Association and paid to third parties do not clearly and unambiguously comply with the restoring order for not only lack of evidence of any agreement reached between the party Royal Fund, except for legal arguments in the opposition filed, but also for lack of evidence that any of such other payments, except for the reimbursement of rents shown by checks

International Longshoremen's Assoc., Local 1575, et al
v. Horizon Lines of Puerto Rico, et al.,
Civil No. 06-2034 (FAB-CVR)
Report and Recommendation
Page No. 9

---

#2022 and #2057, were indeed for the benefit of Royalty Fund. Thus, there is clear evidence of reimbursement by Longshoremen's Association of $35,000.00 to Royalty Fund.

## CONCLUSION

In view of the foregoing, it is recommended that Royalty Fund's motion for contempt (Docket No. 226) be GRANTED and a writ of attachment be issued in the amount of $34,483.29. This amount represents the total amount claimed by Royalty Fund of $69,483.29 less the $35,000.00 already restored by Longshoremen's Association.

IT IS SO RECOMMENDED.

The parties have fourteen (14) days to file any objections to this report and recommendation. Amended Fed. R. Crim P. 59 (b)(2). *See also* Amended Local Rules. Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986). *See* Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

In San Juan, Puerto Rico, this 24th day of April of 2012.

s/**CAMILLE L. VÉLEZ-RIVE**
**CAMILLE L. VÉLEZ-RIVE**
**UNITED STATES MAGISTRATE JUDGE**